IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| WILLIAM BRANT, | : | |
| Plaintiff, | : | |
| VS. | : | CIVIL ACTION FILE NO. |
| | : | **7: 04-CV-41 (HL)** |
| LAVERN FRY, et al., | : | |
| Defendants. | : | |

## RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action is a motion for summary judgment filed on behalf of defendants (Doc 56). At all times relevant to this case the plaintiff was confined at Valdosta State Prison in Valdosta, Georgia. Plaintiff filed his complaint on April 29, 2004 alleging that Defendants Willie Map and Lavern Fry were deliberately indifferent towards his serious medical needs and violated his Fourteenth Amendment procedural due process rights by failing to comply with State of Georgia standards governing medical treatment of inmates. Defendants submitted a motion for summary judgment (doc. 23) that addressed plaintiff's claims regarding the alleged violation of his Eighth Amendment rights in the deliberate indifference to his serious medical needs, but did not specifically address plaintiff's claims regarding due process under the Fourteenth Amendment. Summary judgment was granted to defendants on the deliberate indifference claims; however, the Fourteenth Amendment claims are now addressed in this current motion for summary judgment.

Plaintiff claims that defendants violated his Fourteenth Amendment procedural due process rights by denying him medical attention in violation of a Georgia Statute, a Board of Corrections Rule and certain Georgia Department of Corrections Standard Operating Procedures.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the

dismissal of factually unsupported claims prior to trial.

Plaintiff alleges in his complaint that he injured his foot during a wellness walk on March 19, 2003 by stepping on concrete; however, plaintiff states that he did not at that time know that his foot was broken. The next day on March 20, 2003, plaintiff complained to defendant Fry of the pain and swelling in his foot; plaintiff states that Nurse Fry told him the visit was for his high blood pressure and he would have to see a sick call nurse for his foot. Fry gave him ibuprofen for the pain.

On March 21, 2003, plaintiff noticed that his foot had swollen to twice its normal size, and requested that it be seen at sick call. Nurse Mapp examined plaintiff's foot. Plaintiff admits that he told Nurse Mapp that he thought it might be related to a broken bone he had about 20 years prior, and that he felt the bone "shifting" and could not walk on it because of the pain. Mapp then took plaintiff to Fry for further assistance. According to plaintiff, Fry stated that she would not take a look at his foot, would not prescribe crutches, and told Mapp to have plaintiff leave the medical department. However, Mapp provided plaintiff an opportunity to see Dr. Okori (who is not a party to this motion). According to plaintiff, Dr. Okori refused to examine plaintiff, but did provide crutches and continued plaintiff on pain medication percogesic.

Plaintiff put in a written request to be seen by medical on March 25, 2003. Hearing no response, plaintiff submitted another request on April 2, 2003 for an examination because of the continuing pain and swelling. Plaintiff submitted another request on April 10, 2003, and again received no response. Plaintiff then told his counselor on April 17, 2003 of his condition and the lack of response from medical. On April 20, 2003, plaintiff gave his request for medical to the pill call nurse. On the next day, plaintiff told the warden of his problem during inspection. On

3

April 22, 2003, plaintiff told his counselor that he had still not been taken to medical. His counselor tried to call medical and received no response. He told Deputy Warden Nervo of his problem later that day, who advised plaintiff to file a grievance, but that he would try to help plaintiff in the meantime.

Plaintiff was called in to see Dr. Okori on the next day, April 23, 2003, who examined plaintiff's foot and ordered an x-ray. The x-ray was taken on April 25, 2003, and it showed that plaintiff's foot was broken. Dr. Okori told plaintiff that his foot was too swollen for a cast. On May 6, 2003, plaintiff was taken to Dr. Sanderlin in Valdosta, who put a cast on plaintiff's foot.

In Nurse Fry's affidavit, she states that she did conduct an initial assessment of plaintiff's foot, and, based upon his suggestion that it might be related to an old injury, concluded that he possibly had arthritis in his foot, and gave him medication for the pain and referred him for a follow up examination. (Exhibit C, Doc. 23). According to Nurse Mapp's affidavit, plaintiff presented with complaints of foot pain and swelling on March 21, 2003, and was referred to the doctor who gave plaintiff crutches and pain medication. Plaintiff was then scheduled for a follow-up examination on April 23, 2003.

In his complaint, plaintiff states that his 14th Amendment right to due process was violated when defendants (a) denied plaintiff medical attention by not following the statute set out in O.C.G.A. Title 42 and also the Rules and Regulations in 124-4-4.01 (See O.C.G.A. 42-2-11 (c) and G.D.C. Standard Operating Procedures VH02-0001-VH05-0001. [Complaint , Doc. 2, p. 6].

In his response to the motion for summary judgment, plaintiff states that defendants failed to follow their own rules, which included mandatory language contained within the Standard Operating Procedures regarding the treatment of inmates for medical issues. (Doc. 59).

Plaintiff bases his due process claim on the same set of facts as his deliberate indifference to serious medical needs claim. [Complaint, Doc. 2, p. 6, p. 1-5].  Plaintiff alleges that Nurse Mapp and Nurse Fry failed to give him appropriate medical care when they saw him in March of 2003 in that they failed to recognize that his foot was actually broken in a recent injury despite the fact that he told them his condition was related to broken bone suffered twenty years ago. [Complaint, Doc. 2, p. 1-3].

The Eighth Amendment's provisions against cruel and unusual punishment of post conviction inmates apply to the States as a result of the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666 (1962); Parratt v. Taylor, 451 U.S. 527, 536 (1981). In Estelle v. Gamble, the Supreme Court acknowledged that the Eighth Amendment applies not only to circumstances of the sentence, but also to certain post-sentence deprivations that were not part of the actual sentence itself, such as deprivations of medical care. Estelle v. Gamble, 429 U.S. 97 (1976).

However, the Courts have analyzed an Eighth Amendment denial of medical care claims, as applied to the States through the Fourteenth Amendment Due Process Clause, under the deliberate indifference standard set forth in Estelle v. Gamble and its progeny rather than traditional Fourteenth Amendment jurisprudence. Gilmere v. Atlanta, 774 F.2d 1495, 1506 at footnote 7, 1509 (11th Cir. Ga. 1985); Daniels v. Williams, 474 U.S. 327, 330, and 333 (1986); Estelle v. Gamble, 429 U.S. 97 (1976); Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, (11th Cir. 1994); and Harris v. Coweta County, 21 F.3d 388 (11th Cir. Ga. 1994).

*Procedural Due Process*

O.C.G.A. § 42-2-11 is entitled "Powers and duties of board; adoption of rules and regulations" and sets forth the general powers and duties of the Georgia Board of Corrections. O.C.G.A. § 42-2-11. Section (c) of O.C.G.A. § 42-2-11 simply directs the board to adopt rules governing the assignment, housing, working, feeding, clothing, treatment, discipline, rehabilitation, training, and hospitalization of all inmates coming under its custody, but does not establish any procedures for the implementation of these rules. O.C.G.A. § 42-2-11 (c). Board of Corrections Rule 125-4-4.01, and all twenty three GDC SOPs from VH02-0001 through VH05-0001, are primarily administrative in nature and do not create any procedures for the examination and treatment of inmates medical conditions. [Allen Affidavit, para. 6; and attached exhibits 1-24].

The Due Process Clause's procedural component guarantees fair procedures whereby the state may not deprive a person of liberty or property without providing "appropriate procedural safeguards." Daniels v. Williams, 106 S.Ct. 662, 678 (1986)(Cits. and internal quotations omitted).

However, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process" as "the Constitution does not guarantee due care on the part of state officials. Sacramento v. Lewis, 523 U.S. 833, 849 (1998). Thus, mere negligent conduct does not "wor[k] a deprivation in the constitutional sense." Daniels v. Williams, 474 U.S. 327, 330, (1986). Notably in Daniels the Supreme Court cites Estelle v. Gamble for the provision that deliberate indifference to prisoner's serious illness or injury is sufficient to constitute cruel and unusual punishment under the Eighth Amendment but that negligence is insufficient to support such a claim. Daniels, 474 U.S., at 330 citing Estelle v. Gamble, 429 U.S. 97, 105 (1976).

Therefore, inmate Brant has failed to allege "a deprivation in the constitutional sense," which would entitle him to procedural due process rights. At most plaintiff has alleged negligence on the part of the defendants.

*Substantive Due Process*

Nor does plaintiff allege a viable substantive due process claim. "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Waddell v. Hemerson, 329 F.3d 1300, 1305 (11th Cir. 2003). Further, "decisions made by a government actor must be egregious, that is, shock the conscience, at the time the government actor makes the decision." Waddell v. Hemerson, 329 F.3d 1300, 1305 (11th Cir. 2003).

Furthermore, violations of state procedures do not create substantive due process rights. Davis v. Scherer, 468 U.S. 183, 194 (1984).

Nothing plaintiff has provided the court, nor anything revealed by a review of the record, rebuts defendants' properly supported motion for summary judgment. Consequently, it is the RECOMMENDATION of the undersigned that the motion for summary judgment (doc. 56) filed on behalf of Fry and Mapp be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 29th day of July, 2008.

//S Richard L. Hodge
RICHARD L. HODGE
msd  UNITED STATES MAGISTRATE JUDGE